IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-CV-121-D

| | | |
|---|---|---|
| GRACE BRIGGS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| JUUL LABS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the court on the motion of Grace Briggs ("plaintiff" or "Ms. Briggs") to compel depositions of Joanna Engelke ("Ms. Engelke"), Sonia Kastner ("Ms. Kastner") and Vincent Lim ("Mr. Lim," and together with Ms. Engelke and Ms. Kastner, the "former employee deponents") [DE-85] ("motion to compel former employee depositions"). This matter is also before the court on plaintiff's motion to compel [DE-90] a deposition of a corporate designee of defendant Juul Labs, Inc. ("defendant" or "Juul") pursuant to Fed. R. Civ. P. 30(b)(6) ("motion to compel 30(b)(6) deposition").[1]

In support of the motion to compel former employee depositions, plaintiff filed a declaration [DE-85-1], exhibits [DEs-85-2 to -3], and a proposed order [DE-86]. Defendant filed a response in opposition [DE-87] to the motion to compel former employee depositions,[2] as well as a declaration [DE-88] and exhibits [DEs-89-1 to -4] in support thereof.

In support of the motion to compel 30(b)(6) deposition, plaintiff filed a proposed order

---

[1] The court notes that Local Rule 7.2(f)(2)(B) requires that memoranda in support of discovery motions not exceed 10 pages in length. Plaintiff's motion to compel 30(b)(6) deposition exceeds 20 pages in length, and plaintiff did not seek a waiver to the page requirement. In the interest of judicial economy, the court will not require that plaintiff resubmit an amended motion to compel 30(b)(6) deposition that complies with the local rules. However, future failures by either party to follow the Local Rules may result in sanctions, including denial of the motion or an award of attorney's fees.

[2] Defendant notes in its response in opposition that it reserves the right to file a motion seeking sanctions following the resolution of the motion to compel former employee depositions. [DE-87] at 11.

[DE-90-1], a declaration [DE-90-2], and exhibits [DEs-90-3 to -9]. Defendant filed a response in opposition [DE-100] to the motion to compel 30(b)(6) deposition, as well as a declaration [DE-101] and exhibits [DEs-101-1 to -11] in support thereof.

For the reasons set forth below, plaintiff's motion to compel former employee depositions [DE-85] is DENIED IN PART AS MOOT and ALLOWED IN PART; and plaintiff's motion to compel 30(b)(6) depositions [DE-90] is ALLOWED IN PART and DENIED IN PART.

## I. FACTUAL BACKGROUND

On November 12, 2021, plaintiff filed a complaint [DE-1], and on October 31, 2022, filed an amended complaint [DE-47] alleging race discrimination, harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended; disability discrimination, harassment and retaliation in violation of the Americans with Disabilities Act; age discrimination, harassment and retaliation in violation of the Age Discrimination in Employment Act; violation of the California Fair Employment and Housing Act; race discrimination, harassment, and retaliation in violation of the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981; retaliation in violation of the Family and Medical Leave Act; violation of the California Labor Code Whistleblower Law; violation of the Employee Retirement Income Security Act of 1974, as amended; Breach of Contract; Breach of Duty of Good Faith and Fair Dealing; Unjust Enrichment; Promissory Estoppel/Detrimental Reliance; and violation of the California Labor Code § 204. *See* Complaint [DE-1] at 1; Am. Complaint [DE-47]. Specifically, plaintiff alleges that she was:

> subjected to egregious discrimination and harassment, including being detained along with another African American employee by armed guards at [a facility of a Juul liaison in North Carolina (the "AFG facility")] for an extended period against their will [(the "Security Guard incident")]. After complaining about this and other discriminatory and harassing acts, after taking medical leave pursuant to the FMLA, and after repeatedly complaining about and objecting to illegal activity occurring at Juul, including improper safeguards and procedures to monitor the levels of

2

nicotine in Juul's products resulting in levels of nicotine in the product that was not as indicated on the packaging, contamination of the products, and improper marketing to minors, [Ms.] Briggs was terminated as a result of retaliation by Juul.

[DE-47] at 1.

Plaintiff also alleges that she expressed various safety concerns about issues she identified while working the AFG facility, including potential contamination of products with blood, mixed lots, mislabeled products of different flavors presenting potential allergy issues, and other issues. *Id.* at 12-14.

## II. PROCEDURAL BACKGROUND

On February 27, 2024, the court held a telephonic hearing (*see* [DE-108]) regarding both of plaintiff's motions to compel [DEs-85; -90] for the purpose of determining the issues raised in the motions. Counsel for plaintiff and counsel for defendant appeared by videoconference, and each was heard regarding the motions.

With respect to the motion to compel former employee depositions [DE-85], counsel for defendant argued, *inter alia*, that the depositions were barred by the apex doctrine and that the requested information could be obtained or had been obtained through other sources. *Cf.* [DE-87] at 5-10.

With respect to the motion to compel 30(b)(6) deposition, counsel for plaintiff provided that there were 56 topics, that plaintiff was seeking to address at the 30(b)(6) deposition, to which defendant would not agree. Defendant reiterated its position from its response in opposition [DE-100] that all of the topics that plaintiff sought to address at the 30(b)(6) deposition were not proportional, because they were cumulative of the discovery plaintiff had already received. *Cf.* [DE-100] at 4.

3

The undersigned directed counsel to meet and confer in order to potentially resolve any of the contested issues in the motions to compel, and set a subsequent telephonic hearing on the motions for March 5, 2024. The parties were instructed to be prepared at the subsequent telephonic hearing to update the court on any progress made in resolving the issues.

On March 5, 2024, the court held a second hearing on the pending motion to compel at which counsel for plaintiff and counsel for defendant each appeared telephonically. [DE-111]. Counsel for the parties provided that they had been unable to reach an agreement on any issues related to the motion to compel former employee depositions [DE-85]. However, counsel for the parties agreed at the hearing that because none of the former employee deponents still worked for Juul, they would have to be subpoenaed, if they were to be deposed.

With respect to the issues raised in the motion to compel 30(b)(6) deposition [DE-90], counsel for plaintiff provided that, after meeting and conferring with defendant's counsel, plaintiff had agreed to accept written responses or withdraw her request to discuss a significant number of topics originally noticed for the 30(b)(6) deposition. *See* [DE-90-3]. The only remaining topics that plaintiff sought to cover at the 30(b)(6) deposition were topics numbered: 22, 25, 27, 30-33, 37-40, 42-48, and 51-54 from the original list of deposition topics. *Cf. id.* at 7-13.

Counsel for defendant reiterated its position from the previous hearing that the 30(b)(6) deposition was unnecessary in its entirety, but confirmed that the referenced topics were the remaining contested topics.

### III. DISCUSSION

The Federal Rules of Civil Procedure enable parties to obtain information by serving requests for discovery upon each other, including through depositions. *See generally* Fed. R. Civ. P. 26-37. Rule 26 provides for a broad scope of discovery:

4

[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

The rules of discovery, including Rule 26, are to be given broad and liberal construction. *Herbert v. Lando*, 441 U.S. 153, 177 (1979); *Nemecek v. Bd. of Governors*, No. 2:98-CV-62-BO, 2000 WL 33672978, at *4 (E.D.N.C. Sept. 27, 2000); *see also Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs.*, Inc., 334 F.3d 390, 402 (4th Cir. 2003) ("Discovery under the Federal Rules of Civil Procedure is broad in scope and freely permitted.").

While Rule 26 does not define what is deemed relevant for purposes of the rule, relevance has been "broadly construed to encompass 'any possibility that the information sought may be relevant to the claim or defense of any party.'" *Equal Emp. Opportunity Comm'n v. Sheffield Fin. LLC*, No. 1:06-CV-889, 2007 WL 1726560, at *3 (M.D.N.C. June 13, 2007) (quoting *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 473 (N.D. Tex. 2005)); *see also Mainstreet Collection, Inc. v. Kirkland's, Inc.*, 270 F.R.D. 238, 240 (E.D.N.C. 2010) ("During discovery, relevance is broadly construed 'to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'") (quoting *Oppenheimer Fund., Inc., v. Sanders*, 437 U.S. 340, 351 (1978)). The district court has broad discretion in determining relevance for discovery purposes. *Watson v. Lowcountry Red Cross*, 974 F.2d 482, 489 (4th Cir. 1992). Rule 37 allows for the filing of a motion to compel where a party fails to respond to discovery requests. Fed. R. Civ. P. 37(a)(3)(B).

5

### A.    Motion to compel former employee depositions [DE-85]

As noted above, plaintiff seeks to compel [DE-85] depositions of three former Juul employees: Ms. Engelke, Ms. Kastner and Mr. Lim. Defendant argues that plaintiff's motion to compel former employee depositions should be denied because: (1) "[plaintiff] fails to carry her burden to depose the three apex witnesses;" ([DE-87] at 5); and (2) all three witnesses are third party witnesses who have not been served with a subpoena (*id.* at 11).

Generally, "a party has no standing to quash a subpoena served upon a third party unless the party can show it has a personal right or privilege regarding the subject matter of the subpoena." *Schonbak v. Minnesota Life*, No. 16CV295 DMS (JMA), 2017 WL 11679904, at *1 (S.D. Cal. July 14, 2017) (citing *Blotzer v. L-3 Commc'ns Corp.*, 287 F.R.D. 507, 509 (D. Ariz. 2012)). Defendant does not argue that it has a personal right or privilege regarding the subject matter of the subpoena. However, defendant cites persuasive caselaw suggesting that the apex doctrine may be asserted on behalf of former employees. [DE-87] at 5 (citing *Rodriguez v. SLM Corp.*, No. 3:07-CV-1866-WWE, 2010 WL 1286989, at *2 (D. Conn. Mar. 26, 2010)). However, the undersigned need not resolve the tension between these two principles, because, as discussed below, plaintiff did not subpoena any of the former employees at issue. Nevertheless, based on the circumstances of this case, the court will provide plaintiff the opportunity to subpoena two of the three former employee deponents for the reasons discussed below.

#### 1.    Apex-level executives

Defendant argues that all three former employees that plaintiff seeks to depose are apex-level executives and that plaintiff "has the burden to prove that the witnesses have special or unique knowledge, and that the information sought is not available from a less burdensome source." [DE-87] at 1.

6

"The apex doctrine 'was developed as an aid in ensuring that the liberal rules of procedure for depositions are used only for their intended purpose and not as a litigation tactic to create undue leverage by harassing the opposition or inflating its discovery costs.'" *Smithfield Bus. Park, LLC v. SLR Int'l Corp.*, No. 5:12-CV-282-F, 2014 WL 547078, at *2 (E.D.N.C. Feb. 10, 2014) (quoting *Performance Sales & Mktg., LLC v. Lowe's Cos., Inc.*, No. 5:07–CV–140–RLV, 2012 WL 4061680, at *3-4 (W.D.N.C. Sept. 14, 2012)). The apex doctrine requires the requesting party to show, as a pre-condition of deposing a corporate defendant's high ranking, *i.e.*, "apex," officer, that "(1) the executive has unique or special knowledge of the facts at issue and (2) other less burdensome avenues for obtaining the information sought have been exhausted." *Performance Sales & Mktg., LLC*, 2012 WL 4061680, at *3 (W.D.N.C. Sept. 14, 2012) (quoting *Wal–Mart Stores, Inc. v. Vidalakis*, No. 5:07–39, 2007 WL 4591569, at *1 (W.D.Ark. Dec. 28, 2007)).

### a.    Ms. Engelke

Ms. Engelke was the former Chief Quality Officer for defendant. [DE-85] at 2. This position makes her a former high-ranking officer or executive at Juul, and she appears to be a similarly high-ranking officer with her new employer. *See* [DE-89-2] at 2 (indicating that Ms. Engelke is an EVP for Quality Compliance, Regulatory and Medical for her new employer). Accordingly, the undersigned finds that the apex doctrine is applicable to Ms. Engelke deposition for purposes of the present motion.

Ms. Engelke served as plaintiff's supervisor for a portion of plaintiff's employment at Juul and authored two of plaintiff's performance evaluations. [DE-85] at 2. Ms. Engelke received plaintiff's first complaint about the Security Guard incident and also received a complaint about plaintiff at the AFG facility. *Id.* Another individual allegedly informed Ms. Engelke about mixed lot problems at the AFG facility, and plaintiff allegedly contacted Ms. Engelke regarding the poor

7

evaluation she had received from Ameya Phalke ("Mr. Phalke"). *Id.* Plaintiff also alleges that Ms. Engelke's name is on a significant number of documents, that were produced during discovery, and plaintiff argues that she "should be permitted the opportunity for Ms. Engelke to authenticate and explain such documents." *Id.*

Defendant contends that plaintiff does not have any unique knowledge about plaintiff's final 12 months working for Juul. [DE-87] at 7. Specifically, defendant alleges that neither the period where Ms. Engelke supervised plaintiff, nor Ms. Engelke's "meets expectations" performance evaluations of plaintiff are in question, and other supervisors gave plaintiff the "needs improvement" performance evaluation that preceded plaintiff's termination by defendant. [DE-87] at 7. Similarly, defendant argues that Ms. Engelke's knowledge about the Security Guard incident is not unique or special, as other individuals also have knowledge of it and defendant's response to it. *Id.* The court is largely persuaded by plaintiff's argument, but not by defendant's argument. While there are possibly more efficient means to authenticate relevant emails, as suggested by defendant at the telephonic hearing before the undersigned, Ms. Engelke's mental impressions with respect to such emails and the surrounding context, as well as with respect to various events that involved plaintiff are unique to Ms. Engelke and appear to be highly relevant to plaintiff's claims. Similarly, Ms. Engelke's explanation of her "meets expectations" performance evaluations of plaintiff are relevant to claims that plaintiff received negative performance evaluations as retaliation or because of other protected characteristics. Accordingly, the court finds that defendant's apex-level doctrine argument with respect to Ms. Engelke fails.[3]

---

[3] While the court's instant ruling may inform its analysis of related issues, it does not expressly preclude Ms. Engelke from choosing to file her own motion to quash any subpoena that plaintiff may issue to her.

### b.    Ms. Kastner

Plaintiff does not explain Ms. Kastner's role in her motion, but defendant alleges that Ms. Kastner "was the top executive over Juul's global supply chain" and reported directly to the CEO. *See* [DE-87] at 6.  This position makes her a former high-ranking officer or executive at Juul, and she appears to be a similarly high-ranking officer with her new employer.  *See* [DE-89-2] at 4 (indicating that Ms. Kastner is the CEO for her new employer).  Accordingly, the undersigned finds that the apex doctrine is applicable to Ms. Kastner for purposes of the present motion.

Plaintiff alleges that "Ms. Kastner was extensively involved in the [Security Guard incident], and specifically, upon hearing of the incident, remarked 'Omg this is horrible.'"  [DE-85] at 3.  Plaintiff additionally alleges that Ms. Kastner, along with the other former employee deponents, was "mentioned in thousands of documents, demonstrating their significant involvement in [Ms.] Briggs' employment – and the harassment, discrimination, and retaliation that she experienced while employed at Juul."  *Id.*

Based on the limited information provided in her motion (*see generally* [DE-85]), the court finds that plaintiff has failed to satisfy her burden of demonstrating that Ms. Kastner's knowledge is special or unique and that the information she would provide through a deposition cannot be obtained from some other more convenient source.  *Smithfield Bus. Park, LLC*, 2014 WL 547078, at *2 ("[U]ndetailed assertions . . . are insufficient to overcome the burden imposed by the apex doctrine.").  Accordingly, the court does not allow any subpoena of Ms. Kastner, as discussed below.[4]

---

[4] As discussed herein, plaintiff did not subpoena any of the former employee at issue for deposition.  While the court will allow plaintiff to subpoena Ms. Engelke and Mr. Lim as discussed herein, the court does not allow plaintiff to subpoena Ms. Kastner in the interest of judicial efficiency and pursuant to the court's broad discretion in handling discovery matters.  *See Cook v. Howard*, 484 Fed.Appx. 805, 812 (4th Cir. 2012) ("District courts are afforded broad discretion with respect to discovery[.]").

9

###     c.     Mr. Lim

Mr. Lim was the former VP of People for Juul.  [DE-85] at 3.  Defendant also notes that Mr. Lim was the top executive over human resources at Juul.  [DE-87] at 6.  This position makes him a former high-ranking officer or executive at Juul, and he appears to be a similarly high-ranking officer with his new employer.  *See* [DE-89-2] at 7 (indicating that Mr. Lim is currently the Chief People Officer for his new employer).  Accordingly, the undersigned finds that the apex doctrine is applicable to Mr. Lim for purposes of the present motion.

Plaintiff alleges that Mr. Lim was a significant figure in plaintiff's employment.  [DE-85] at 3.  Specifically, she notes that Mr. Lim participated in conversations regarding plaintiff's complaints of discrimination, including the Security Guard incident, and was significantly involved in the process surrounding plaintiff's disability leave and her requests for accommodation.  [DE-85] at 3.  Plaintiff also alleges that because Mr. Lim is "highly placed in the human resources department, [he] is a necessary witness to question regarding the human resources aspects of this case."  *Id.*

Defendant alleges that plaintiff has failed to show that Mr. Lim "has any unique knowledge or that [plaintiff] is unable to get the information from another source" and specifically notes that another Juul employee whom plaintiff deposed, Marcus "Gesner[, ("Mr. Gesner")] has knowledge about [plaintiff's] medical leave and accommodation request."  [DE-87] at 9.

Defendant alleges that plaintiff was terminated as part of a larger workforce reduction involving approximately 700 employees.  *Id.* at 4.  At least some of these 700 individuals likely represent relevant comparators.  Accordingly, the court finds that Mr. Lim's organization-wide perspective, combined with his experiences and contact with plaintiff, provide him with unique knowledge of the context of plaintiff's situation that cannot be obtained from some other more

10

convenient source. Similarly, the knowledge plaintiff alleges Mr. Lim to have about plaintiff's disability leave and her requests for accommodation are also unique to him and cannot be obtained even from other individuals who participated, to varying degrees, in the processes surrounding plaintiff's disability leave and requests for accommodation. Accordingly, the court finds that defendant's apex-level doctrine argument with respect to Mr. Lim fails.[5]

### 2. Need for a subpoena

Counsel for both parties agreed at the telephonic hearing that because the former employee deponents are no longer employed by the defendant, the proper means to arrange depositions with such individuals would be by subpoena. Neither party argues that any of the individuals have been subpoenaed. Accordingly, plaintiff's motion to compel former employee depositions [DE-85] is DENIED AS MOOT.

However, while coordinating various depositions with defendant's counsel, defendant's counsel coordinated the availability of three other "former employees," and expressly objected to coordinating the depositions of certain other individuals, because they were never Juul employees. *See* [DE-85-2] at 6-8. Furthermore, counsel for defendant provided on October 30, 2023, that it would "be in touch about [deposition dates for] Joanna Engelke, Vincent Lim, Sonia Kastner, [and other individuals]." [DE-85-2] at 6. On November 1, 2023, counsel for defendant noted to plaintiff that the former employee deponents were former employees and that Juul objected to the depositions of the former employee deponents, because the burden of deposing them was not proportional to the needs of the case. [DE-85-2] at 3-4. Similarly, plaintiff alleges that on December 12, 2023, counsel for defendant informed counsel for plaintiff that defendant

---

[5] While the court's instant ruling may inform its analysis of related issues, it does not expressly preclude Mr. Lim from choosing to file his own motion to quash any subpoena that plaintiff may issue to him.

maintained its objections to the depositions of former employee deponents because the witnesses were allegedly not necessary and, on December 18, 2023, communicated similar objections, specifically noting that the depositions were unnecessary because other witnesses had been deposed. [DE-85] at 5-6.

The local and federal rules expressly require that efforts to resolve discovery disputes be conducted in "good faith." *Cf.* Fed. R. Civ. P. 26(c)(1); Local Rules 7.1.(c)(2). Here, defendant had previously expressly refused to coordinate the depositions of two non-employees ([DE-85-2] at 6), but had coordinated the depositions of other former employees (*id.* at 8) and advised plaintiff's counsel that it would "be in touch about [deposition dates for] Joanna Engelke, Vincent Lim, Sonia Kastner" (*id.* at 6). Defendant later voiced objections to the deposition of those witnesses only based on proportionality, but not their employment status.[6] Accordingly, the court finds that plaintiff's counsel had a good faith basis to believe that defendant would be able to assist in coordinating the depositions of the former employee deponents, but for defendant's substantive objections. Accordingly, the court will provide plaintiff with the opportunity to subpoena Ms. Engelke and Mr. Lim **within 10 days of the date of this order**. Any deposition pursuant to this order must take place **within 60 days of the date of this order unless otherwise ordered by this court.**

### B.    Motion to compel 30(b)(6) deposition [DE-90]

Rule 30 allows a party to take depositions, including depositions of organizations pursuant to Rule 30(b)(6). "The broad scope of discovery permitted under Rule 26(b)(1) applies to Rule 30(b)(6) depositions." *Martin v. Bimbo Foods Bakeries Distrib., LLC*, 313 F.R.D. 1, 6 (E.D.N.C.

---

[6] While defendant noted on November 1, 2023, that the former employee deponents were former employees, it did not communicate this as the reason it objected to the request for it to coordinate the depositions. *See* [DE-85-2] at 3-4.

12

2016).  "To the extent information sought in a Rule 30(b)(6) deposition is relevant to the claims or defenses in the case and is known or reasonably available to the corporation, it must provide a corporate designee or multiple designees prepared to provide that information."  *Coryn Group II, LLC v. O.C. Seacrets, Inc.*, 265 F.R.D. 235, 238 (D. Md. 2010).  "A deposition of a deponent in his individual capacity differs from that of a deponent as a corporate representative."  *Ramsey v. Bimbo Foods Bakeries Distrib., LLC*, No. 5:14-CV-26-BR, 2016 WL 676378, at *7 (E.D.N.C. Feb. 18, 2016).  "A Rule 30(b)(6) designee speaks as the corporation and testifies regarding the knowledge, perceptions, and opinions of the corporation[, while] when the same deponent testifies in his individual capacity, he provides only his personal knowledge, perceptions, and opinions."  *In re C.R. Bard, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, No. 2:10-CV-01224, 2013 WL 1722998, at *1 (S.D.W.Va. Apr. 22, 2013).

The broad scope of discovery notwithstanding, the court may impose appropriate limitations on discovery "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c)(1).  The court may require restrictions "forbidding the disclosure or discovery" or "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters."  *Id.* 26(c)(1)(A), (c)(1)(D).

As discussed above, counsel for the parties agreed at the telephonic hearing that the controversy regarding the 30(b)(6) deposition is limited to the following 30(b)(6) deposition topics: 22, 25, 27, 30-33, 37-40, 42-48, and 51-54.  Defendant contends that even this limited scope of topics is "duplicative or cumulative of discovery already taken or available from a more convenient source."  *Cf.* [DE-100] at 1.  Plaintiff argues that just because "fact witnesses or other discovery may have some overlap with the corporate testimony sought in any particular topic does not make the related corporate designee testimony duplicative and unreasonably burdensome."

[DE-90] at 18.

**1. Categorical refusal of 30(b)(6) deposition**

Defendant argued in its brief and before the undersigned that all of the topics that plaintiff sought to address at the 30(b)(6) deposition were not proportional because they were cumulative of the discovery plaintiff already received. *Cf.* [DE-100] at 4.

As an initial matter, the court notes that the cases cited by defendant in support of a complete denial of a 30(b)(6) deposition are inapposite. In *Nicholas v. Wyndham Int'l, Inc.*, 373 F.3d 537, 543 (4th Cir. 2004), the company that was the subject of the 30(b)(6) deposition belonged to the plaintiffs who were suing a resort seeking damages for the alleged molestation of their minor child, and a magistrate found some of the primary topics sought in the 30(b)(6) deposition, *i.e.*, "the employment and immigration matters [related to the plaintiffs] had very little probative value with respect to the issues in the underlying lawsuit." *Id.* at 540. Conversely, the court finds Juul's business and almost all of the matters sought in the 30(b)(6) deposition to be relevant to plaintiff's claims, as discussed below.

Another case cited by defendant, *Kinetic Concepts, Inc. v. Convatec Inc.*, 268 F.R.D. 255, 256 (M.D.N.C. 2010), involved a protective order with respect to one isolated topic in a 30(b)(6) deposition related to affirmative defenses in a patent case that the court found to have been thoroughly covered by a previous interrogatory. Setting aside the unique issues surrounding affirmative defenses in patent cases, the defendant in *Kinetic Concepts, Inc.* agreed to "make representatives available for 16 of the 17 topics set out in the Rule 30(b)(6) deposition notices[,]" unlike Juul's categorical objection to a 30(b)(6) deposition here.[7] *Id.* Similarly, in *Loboa v.*

---

[7] The court additionally notes that the 30(b)(6) deposition topic related to affirmative defenses is the sole topic that the court denies for the reasons discussed herein.

14

*Women's Health All., P.A.*, No. 5:18-CV-00329-FL, 2020 WL 889739, at *1 (E.D.N.C. Feb. 24, 2020), the court did not prohibit 30(b)(6) depositions categorically, as defendant would have this court do, but limited a second 30(b)(6) deposition to certain topics, because the corporate designee had adequately testified to the other topics during the first 30(b)(6) deposition.

In sum, "[w]hile the court should consider depositions taken of others [and other discovery] in this case [when considering the need for a 30(b)(6) deposition], . . . here the court does not find [the large majority of the topics sought in this 30(b)(6) deposition] to be unreasonable" for the reasons discussed herein. *See Eshelman v. Puma Biotechnology, Inc.*, No. 7:16-CV-18-D, 2017 WL 9440762, at *4 (E.D.N.C. Dec. 28, 2017) (citing *Nicholas*, 373 F.3d).

### 2.    Specific Topics

#### a.       Topics 22, 30, 33, 39-40, 42-43, 46-47

Topics 22, 30, 33,[8] 39-40, 42-43, and 46-47 generally relate to safety, quality, discrimination, harassment and retaliation issues, including complaints and reports made by plaintiff, with respect to the Security Guard incident and otherwise, and any investigations or remedial measures conducted by Juul.  [DE-90-3] at 7-12.

With respect to these topics, defendant argues that it produced documents discussing quality issues in response to plaintiff's request for production and provided further information in its six-page response to plaintiff's interrogatories, as well as in its statement of material facts in support of its motion for summary judgment.  [DE-100] at 5 (citing [DE-79-91, -95; DE-82; DE-

---

[8] The court notes that it discusses Topic 33 both here under subsection (a.) relating to safety, quality, discrimination, harassment and retaliation issues, including complaints and reports made by plaintiff, and any investigations or remedial measures conducted by Juul, as well as under subsection (d.) relating to information surrounding the AFG facility, including the Security Guard incident. *See* [DE-90-3] at 7-12.  This topic is discussed in both subsections because it is logically connected to both of these topics.  However, the undersigned notes that as this topic is also granted under both subsections, there is no contradiction between these discussions.

15

93-2; DE-94-1; DE-101-1 to -2, -11]. Defendant also notes that plaintiff's former supervisors and former defendant employees testified about this topic. *Id.* Finally, defendant contends that "[i]t is harassing to move to compel a corporate designee to testify based in large part on quality records that [Ms.] Briggs' herself authored and reviewed as a regular part of her job." *Id.* As noted above, the mere fact that individuals have testified on a specific topic or that documents have been produced that appear to relate to the relevant subject matter, does not eliminate a plaintiff's right to have a corporate representative provide responses on behalf of their organization with respect to such topics. *See Ramsey*, 2016 WL 676378, at *7. Additionally, the court does not find defendant's "six-page interrogatory response" or other cited documents responsive to all of the safety and quality issues that plaintiff's 30(b)(6) topics seek to explore. For example, while the interrogatory response and statement of material facts sections that defendant cites in support of its motion [DE-100] address some of the actions taken in response to incidents related to blood or mixed lots, it is unclear whether it addresses all of such incidents that would be responsive to the plaintiff's 30(b)(6) deposition topics. These types of clarifications are the benefits that a 30(b)(6) deposition can provide. Accordingly, plaintiff's motion to compel 30(b)(6) deposition with respect to topics 22, 30, 33, 39-40, 42-43, and 46-47 is GRANTED.

        **b.    Topics 25 and 53**

Topics 25 and 53 seek information about the individual or individuals who replaced plaintiff or absorbed her duties between plaintiff's separation and the present, including the relative qualifications of such individuals compared to plaintiff and whether such individual or individuals had any of the protected characteristics that plaintiff had. [DE-90-3] at 8-9, 13. These questions also relate to the reasons for hiring or assigning duties to such individuals. *Id.* at 8. Topic 53 specifically seeks whether the person who replaced plaintiff or absorbed her duties ever made an

employment related complaint. *Id.* at 13. Defendant contends that its discovery responses have already shown that "[p]laintiff's position was eliminated, and [p]laintiff was not replaced"; "AFG Raleigh was closed, former consultant Charles McIver filled in for [plaintiff] while she was on medical leave (and his contract ended when AFG Raleigh closed), and former Juul employee Mark Hall worked on quality on behalf of Juul at the AFG Raleigh facility while [plaintiff] was on leave." [DE-100] at 5.

While the discovery responses that defendant alludes to appear to answer some facets of the relevant topics, defendant has failed to show that they are responsive to all of them. For example, the information that defendant provided in previous discovery responses does not appear to indicate the protected characteristics, if any, of the individuals who replaced plaintiff, the reasons for selecting these specific individuals, and whether such individuals made any employment related complaints. *Cf. Eshelman*, 2017 WL 9440762, at *4 ("Merely producing a document does not obviate a party from testifying about that document. Rather, documents produced in discovery are often the subject of deposition testimony."). Accordingly, plaintiff's motion to compel 30(b)(6) deposition with respect to topics 25 and 53 is GRANTED.

c.    **Topic 27**

Topic 27 seeks facts and identification of documents upon which Juul bases its affirmative defenses. [DE-90-3] at 9. Plaintiff contends that topic 27 is not overbroad or unduly burdensome. [DE-90] at 16. Defendant argues that defendant has already produced non-privileged documents that are responsive to plaintiff's other discovery requests related to affirmative defenses. [DE-100] at 5. Accordingly, defendant argues that "[w]ithout particularizing what facts [plaintiff] seeks regarding the affirmative defenses, Juul is not able to prepare a corporate designee to testify about the legal conclusions stated in the affirmative defenses." *Id.*

17

This court has previously noted that while "there is disagreement among courts on allowing parties to explore facts underlying legal claims and theories in a 30(b)(6) deposition . . . , contention interrogatories appear to be the favored method for seeking such information." *Figueroa v. Butterball, LLC*, No. 5:20-CV-585-D, 2023 WL 4112763, at *4 (E.D.N.C. June 21, 2023) (citations omitted). Here, plaintiff propounds a request for production ("RFP") 53 for "[a]ny and all Documents that [d]efendant Relied upon or intends to Rely upon to support each and every affirmative [and additional] defense contained in [d]efendant's Answer to Plaintiff's Complaint." [DE-101-1] at 35. Plaintiff made no contention that defendant's response to this RFP was incomplete. Accordingly, plaintiff's motion to compel with respect to topic 27 is DENIED.

### d. Topics 31-33, 37-38, 48, 51

Topic 31 seeks information on the decision to terminate plaintiff. [DE-90-3] at 9. Topics 32 and 38 seek information on plaintiff's accommodations, including with respect to plaintiff's claims of PTSD. *Id.* at 10-11. Topics 33, 37, 38, 48, and 51 seek information surrounding the AFG facility, including the Security Guard incident. *Id.* at 10-12.

Defendant notes that it provided significant information with respect to all of these topics through its document productions, interrogatory responses, and depositions that plaintiff has already conducted. Specifically, defendant notes that with respect to the Security Guard incident, plaintiff has deposed the security guards who escorted plaintiff to the front office, and, with respect to her termination, plaintiff has already deposed the decision maker, Mr. Gesner, and her supervisor at the time, Mr. Phalke. [DE-100] at 6.

As previously discussed, 30(b)(6) depositions provide a unique function in the discovery process in providing an organization's perspective on various topics. While there can be circumstances where specific topics are truly redundant or beyond the scope of discovery, the court

18

does not find that defendant has shown that to be the case with respect to these topics. Accordingly, plaintiff's motion to compel 30(b)(6) deposition with respect to topics 31-33, 37-38, 48, and 51 is GRANTED.

   **e.**  **Topics 44-45, 54**

  Topics 44-45 and 54 relate to lawsuits against Juul alleging tainted or contaminated product (topic 44, [DE-90-3] at 11-12), retaliation against employees for raising concerns of safety, quality, advertising or other issues (topic 45, *id.* at 12), or marketing the Juul product to underage individuals (topic 54, *id.* at 13). Plaintiff specifically notes that she complained about the marketing of Juul products to underage individuals and "is entitled to learn if any other employee or other individual complained about the same issue." [DE-90] at 16. Defendant contends that plaintiff "simply fails to allege that she raised marketing concerns." [DE-100] at 8.

  Plaintiff's amended complaint alleges that after "repeatedly complaining about and objecting to illegal activity occurring at Juul, including . . . improper marketing to minors, [Ms.] Briggs was terminated as a result of retaliation by Juul." [DE-47] at 1. "Unlike . . . fraud claims, the heightened pleading requirements of Rule 9(b) do not apply to . . . retaliation claim[s], which 'need only satisfy the Rule 8(a) notice pleading standard.'" *United States ex rel. Garrett v. Kootenai Hosp. Dist.*, No. 2:17-CV-00314-CWD, 2020 WL 3268277, at *8 (D. Idaho June 17, 2020) (quoting *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1103 (9th Cir. 2008)). Accordingly, the court finds that plaintiff's request is relevant to her claim of retaliation in response to complaining and objecting to improper marketing to minors.

  Defendant further argues that plaintiff "may pull [relevant] publicly-available complaints from the public record, which is a 'source more convenient, less burdensome, [and] less expensive' than a corporate designee deposition." [DE-100] at 8 (alteration in original) (quoting Fed. R. Civ.

P. 26(c)).  Fed. R. Civ. P. 26(b)(1) requires the court to consider "the parties' relative access to relevant information . . . and whether the burden or expense of the proposed discovery outweighs its likely benefit" in determining whether the discovery sought is proportional.  While plaintiff can certainly access public filings of the cases related to improper marketing to minors that she references in her complaint, defendant is best placed to explain the circumstances surrounding these cases and whether there are other similar cases which are responsive to plaintiff's request.  *See Martinez v. Johnson & Johnson*, No. 2:18-CV-0220-JTM-JEM, 2020 WL 13180399, at *2 (N.D. Ind. Apr. 30, 2020) ("The Court finds that information about other ongoing cases involving the same product is relevant and discoverable, and that Defendants are in the best position to provide that information.").  Parties are entitled to seek relevant information during 30(b)(6) depositions that goes beyond the filings in the relevant lawsuits.  *See Richardson v. Fiat Chrysler Automobiles (FCA) US, LLC*, No. 7:19-CV-15 (HL), 2020 WL 592329, at *3 (M.D. Ga. Feb. 6, 2020) ("The testimony may cover the corporation's interpretation of the produced documents as well as its 'position, beliefs[,] and opinions' regarding the prior claims.") (alteration in original) (citation omitted).

Unlike cases where the requested lawsuits are "overly broad[,] seek irrelevant information[, and are]. . . not substantially similar to . . . the subject lawsuit[,]" *cf. Fish v. Air & Liquid Sys. Corp.*, No. CV GLR-16-496, 2017 WL 697663, at *11 (D. Md. Feb. 21, 2017), the court finds that the lawsuits referenced in topics 44-45 and 54 are narrowly-tailored and relevant to plaintiff's claims.  Accordingly, plaintiff's motion to compel 30(b)(6) deposition with respect to topics 44-45 and 54 is GRANTED.

The court's current order does not abrogate the limitations in scope set out in Fed. R. Civ. P. 26(b)(1) to "nonprivileged matter[s,]" and any confidentiality concerns should be addressed

20

through the existent protective order [DE-68] or through a motion for an amendment to the protective order.

### f. Topic 52

Topic 52 enquires about the circumstances and reasons for changing the person to whom Ms. Briggs reported to Mr. Phalke and for changing her job duties, as well as the changes in plaintiff's job duties change following the change in her reporting structure. [90-3] at 12. Neither party addresses this topic in their respective motions. The party opposing a discovery motion "bears the burden of showing why [the motion to compel] should not be granted." *Mainstreet Collection, Inc.*, 270 F.R.D. at 241. This burden requires the non-moving party to "make a particularized showing of why discovery should be denied, and conclusory or generalized statements fail to satisfy this burden as a matter of law." *Id.* Because defendant has failed to meet this burden with respect to this topic, plaintiff's motion to compel 30(b)(6) deposition with respect to topic 52 is GRANTED.

### 3. Timeliness

Plaintiff originally noticed a 30(b)(6) deposition in August 2023. [DE-90] at 3; [DE-100] at 2. On September 12, 2023, defendant provided written objections ([DE-90] at 3; [DE-100] at 2) and, after not receiving a response, followed up again on October 2, 2023 ([DE-100] at 2). On October 17, 2023, the parties met and conferred by phone, and plaintiff agreed to consider revising the topics. [DE-90] at 3; [DE-100] at 2. On December 22, 2023, plaintiff provided a list of revised topics, noticing the 30(b)(6) deposition for January 17, 2023. [DE-90] at 3; [DE-100] at 2. On January 5, 2024, plaintiff emailed defendant, and defendant replied that they would respond by week's end. [DE-100] at 2. On January 12, 2023, defendant renewed its objections. *Id.* The parties additionally met and conferred on August 29, 2023 ([90-2] at 1), January 18, 2024, and

21

January 19, 2024 ([DE-90] at 3).

Defendant contends that plaintiff was not diligent in seeking to take the 30(b)(6) deposition before the close of discovery, and plaintiff's motion should be denied as untimely. [DE-100] at 2-4. Specifically, defendant notes that plaintiff waited two months to respond to defendant's request to confer about the 30(b)(6) topics and two more months to propose revisions. *Id.* at 3. Plaintiff contends that defendant showed bad faith by waiting three weeks to respond to plaintiff's amended notice of deposition and informed plaintiff of its objections only two business days (but five calendar days) prior to the scheduled deposition. [DE-90] at 22.

Although there was significant delay in plaintiff's counsel's seeking to meet and confer regarding the 30(b)(6) deposition in the autumn of 2023, the court notes the parties' multiple calls to meet and confer throughout the relevant period. Moreover, as discussed above, the court finds that defendant's objection to the deposition topics to be largely meritless. Accordingly, the court does not find that the close of fact discovery under the current scheduling order ([DE-74], as modified by [DE-110]) should bar plaintiff from taking a 30(b)(6) deposition within a reasonable time of the date of this order, as provided further below.

## IV. CONCLUSION

For the reasons set forth above, plaintiff's motion to compel former employee depositions [DE-85] is DENIED IN PART AS MOOT and ALLOWED IN PART, and plaintiff's motion to compel 30(b)(6) depositions [DE-90] is ALLOWED IN PART and DENIED IN PART.

Specifically:

1.   The court provides plaintiff with the opportunity to subpoena Ms. Engelke and Mr. Lim **within 10 days of the date of this order**. Any deposition pursuant to this order must take place **within 60 days of the date of this order unless otherwise**

22

**ordered by this court**.

2.      The 30(b)(6) deposition of Juul may proceed with respect to topics 22, 25, 30-33, 37-40, 42-48, and 51-54, but not with respect to topic 27, from the original list of deposition topics.  [DE-90-3] at 7-13.  The 30(b)(6) deposition of Juul must take place **within 60 days of the date of this order unless otherwise ordered by this court**.

SO ORDERED, this 3rd day of June, 2024.

_____
Brian S. Meyers
United States Magistrate Judge

23